## Northern Pipe Line Co. v. Kasych

*M. J. Coyne*, for plaintiff.

*Snyder, Wert & Wilcox*, for defendant.

HENNINGER, P. J., March 5, 1956.—Plaintiff brought this complaint in equity, complaining that it possessed

an easement for a pipeline along the northernmost 10 feet of defendant's property and that defendant has piled five feet of fill over the surface of plaintiff's easement and threatens to macadamize the surface, to plaintiff's irreparable damage.

After the dismissal of preliminary objections to the jurisdiction of the court, an answer was filed admitting the averments in the complaint and amended complaint, but denying any damage to plaintiff and asserting the right to act as defendant has acted and intends to act.

A hearing was held and from the testimony there taken and from admissions in the pleadings, the chancellor makes the following

### Findings of Fact

1. Plaintiff, Northern Pipe Line Company, is a Pennsylvania corporation with offices at 100 Buckeye Road, Macungie, Lehigh County, and is a common carrier engaged in the business of transporting petroleum and refined petroleum products by pipeline.

2. Defendant, Charles Kasych, is an individual who resides in Whitehall Township, Lehigh County.

3. Defendant is the owner of a certain vacant tract or piece of ground containing 0.66294 acres, located in Whitehall Township, Lehigh County, and constituting the southeast corner of the intersection of Pennsylvania State Highway Route 145, Legislative Route No. 555, and a public road leading from Catasauqua to Sherersville, Legislative Route No. 39036, which premises were acquired by defendant pursuant to deed of conveyance from The Atlantic Refining Company dated July 14, 1953, and recorded July 17, 1953, in the office for the recording of deeds in and for Lehigh County, in Deed Book volume 807, p. 380.

4. Said deed of conveyance specifically recites that

the same is given "under and subject to an easement for pipe line right of way dated April 20, 1953, given by the grantor to Northern Pipe Line Company".

5. Prior to the aforementioned conveyance, defendant's immediate predecessor in title, The Atlantic Refining Company, did, by a written agreement dated April 20, 1953, and recorded on May 14, 1953, in the aforementioned recorder's office in Miscellaneous volume 223, p. 115, grant and convey unto plaintiff, inter alia, a right of way across the premises now owned by defendant "for the purpose of constructing, maintaining and operating one (1) line of pipe for the transportation of petroleum, gas or the products of either, with free ingress and egress to construct, operate, maintain, repair or remove said line of pipe".

6. Said right of way is 10 feet wide and extends eastwardly from the center line of Legislative Route 555 along the southern right of way line of Legislative Route 39036 to the eastern boundary of defendant's premises, a distance of 188.24 feet.

7. Said right of way agreement reserves unto the grantor "the right to use and enjoy fully said premises for all purposes consistent with the full use and enjoyment by the grantee of the easement herein granted".

8. During the latter part of the month of April 1953 plaintiff constructed an eight inch pipeline in and through the right of way aforementioned, and since then has utilized said line in its capacity as a common carrier for transporting refined petroleum products.

9. Said right of way agreement was not only recorded as aforesaid but defendant had actual knowledge thereof as well as actual knowledge of the construction and location of plaintiff's pipeline on the premises in question at the time he took title to said

premises and before committing the acts of which plaintiff complains.

10. During the month of June 1954 defendant dumped or caused to be dumped, upon the surface of plaintiff's right of way and in such locations as to increase the depth of the soil covering plaintiff's pipeline, piles of fill approximately five feet in height.

11. The piles of fill were deposited upon plaintiff's right of way and over its pipeline without the knowledge and without the consent of plaintiff.

12. Defendant proposes to erect a building for business purposes on the portion of his premises unencumbered by plaintiff's right of way and to use the aforementioned fill to grade the land surrounding said building.

13. Upon the completion of defendant's building and the grading of the surrounding areas, defendant intends to macadamize the portion of his premises surrounding the building, including all of that portion of his property through which extends the right of way of plaintiff.

14. By stipulation between the parties entered into in open court on May 10, 1955, it was agreed that within three months from said date the level of the soil covering plaintiff's right of way would be reduced to and thereafter maintained at a level not higher than six inches above the existing level of the Catasauqua-Sherersville Road, Legislative Route No. 39036, and that if subsequently defendant was permitted to macadamize the surface of plaintiff's right of way, the surface of the macadam would not exceed an altitude of six inches above the existing level of Legislative Route No. 39036.

15. Defendant's proposed macadamizing of the surface of plaintiff's right of way, if permitted, will result in a portion of plaintiff's right of way approxi-

mately 155 feet in length and 10 feet wide being covered with a hard surface.

16. Defendant's proposed macadamizing of the surface of plaintiff's right of way, if permitted, might render access by plaintiff to its pipeline for the purpose of maintaining and repairing the same more difficult and more costly for the following reasons:

(a) The true location of any leak might be obscured by the macadam surface thereby necessitating additional time and labor in ascertaining the location of the leak.

(b) Removal of the macadam surface might require additional time and labor as compared to the time and labor required to penetrate a covering of soil.

(c) Any delay in reaching the leak might result in a greater loss of product being transported through the line and might also cause the line to be shut down for a longer period of time pending repairs.

(d) The cost of repairs to plaintiff might be increased by the increase in loss of product and the increase in the period of time during which the pipeline is shut down pending location of the leak, and also by the additional labor required to penetrate the macadam surface and to discover the exact location of the leak.

17. Defendant's proposed macadamizing of the surface of plaintiff's right of way, if permitted, might accelerate corrosion of the pipe through galvanic action and the action of anaerobic bacteria, thereby reducing the lifetime of the pipe and increasing the incidence of leaks with a resultant increase in the cost of maintenance of the pipeline.

18. Macadamizing over plaintiff's easement will increase slightly the effort and expense of access to the pipeline for repair over that existing on April 20, 1953, when the easement was granted.

*Discussion*

The parties to this action in equity have agreed upon the general principles governing the relations between the dominant and servient tenement in an easement. This relationship has been defined in Smith v. Rowland, 243 Pa. 306, 311:

"The ordinary rule undoubtedly is that when the owner of the fee in land conveys a right-of-way over it he retains to himself full dominion over the land, except so far as it is necessary to restrict that dominion in order to secure the enjoyment of the easement granted, and that he may make any use of the land which does not interfere with the reasonable use of the way by his grantee."

This is stated in Restatement, Property, §486:

"The possessor of land subject to an easement created by conveyance is privileged to make such uses of the servient tenement as are not inconsistent with the provisions of the creating conveyance."

The parties to an easement can, of course, set down the terms under which the easement is to be enjoyed and those terms prevail as between them. As we interpret the grant as set forth in findings of fact nos. 5 and 7, the parties agreed to terms consonant with our Pennsylvania law on the subject.

The dispute between the parties is whether macadamizing the surface over the pipes will materially interfere with plaintiff's enjoyment of its easement. There had also been a dispute as to defendant's proposal to raise the level of ground over the pipes by five feet over the level when the easement was granted, but that dispute has been resolved by defendants agreeing that over the pipes the level shall be no more than six inches above that of the highway and plaintiff's stipulation that that level was satisfactory to it.

We note that defendant's proposal to lay macadam over the pipeline will interfere in no way with the *operation* of the pipeline. The oil will flow just as freely whether the surface of the ground is soil, macadam or concrete.

Plaintiff claims that macadamizing the surface will cause material interference with its enjoyment of the easement in two ways, (1) destruction of its pipes and (2) additional costs and difficulty in detecting defects and in making repairs.

If we were convinced that there was an immediate and obvious danger of destruction of the pipes because of macadamizing the surface, we would consider that a material interference with the easement: Industrial Gas Co. v. Jones, 62 Ohio App. 553.

Plaintiff, despite its uncontradicted testimony, has not convinced us that the life of the pipes will be materially shortened by the macadamizing of the surface. Its experts did state that retention of moisture might hasten the action of galvanic cells in producing corrosion and also might hasten the development of anaerobic bacteria, of which the soil is now comparatively free. The experts, however, would not express any opinion as to the relative speed of corrosion with or without a hard surface above ground, so that we cannot determine the materiality of the element of lack of surface aeration upon the life of the pipe.

There is no complaint that any component of the macadam is deleterious to the pipe and that distinguishes this case from the Ohio case.

We also suggest that the added difficulties of locating and repairing leaks are highly exaggerated. We, of course, cannot say whether a macadam which will permit the seeping through of rain water, as the experts testified, will not also permit the raising to the surface of oil leaks nor whether the nature of the

fill might not also affect the vertical rising of the oil. Here again we are of the opinion that the possible loss to plaintiff is too speculative to justify our depriving defendant of the full use of his property in a way which will not interfere with the operation of the pipeline.

The parties showed good judgment in resolving the question of the height of ground level over the pipes. As we stated in our opinion heretofore filed, the amount of overlay might well be an interference. We believe that the six inches agreed upon is an immaterial increase, whereas a higher level at some point would have been laying too heavy a burden upon plaintiff.

The matter of cutting through a hard surface as opposed to crushed stone or soil is also an unsubstantial increase in the burden laid upon plaintiff, in the light of modern excavating methods, even with spark-proof tools.

It does, however, pose one additional problem. The grant of the easement contains this language: "This grant is upon condition that the grantee shall repair any and all physical damage caused by the constructing, operating, maintaining, *repairing and removing* of said line of pipe. . . ."

Should plaintiff find it necessary to open a macadam surface, the question might arise under the above recited clause whether it would be required to relay a macadam surface. We are of the opinion that, in that case, the doctrine of Mercantile Library Co. of Philadelphia v. Fidelity Trust Co., 235 Pa. 5, 13, ought to apply that: "The covenant must be understood to apply to the physical conditions then existing on the ground."

In the face of the legions of cases to the contrary, we cannot interpret the above statement to mean that defendant must leave his property in the state in which it was when the easement was granted. It can be interpreted, however, to mean that plaintiff cannot be

required to repair damage for conditions not contemplated by the parties.

All that could be asked of plaintiff, therefore, if it were required to break up the macadam if necessary to reach the pipes, would be that it should level off the surface, but not that it should restore the macadam surface.

While we have decided that plaintiff's fears of prospective damage from a macadamized surface over its pipes is too speculative to warrant enjoining defendant from enjoying a lawful use of his property, our decision is not to be interpreted as precluding any action for damages at some later date should plaintiff then be able to prove that its pipes have actually corroded because of conditions set up by defendant upon the servient tenement.

The chancellor has drawn the following

### Conclusions of Law

1. The court has jurisdiction of the parties and of the subject matter of this controversy.

2. Plaintiff holds its right of way in perpetuity and defendant, as the owner of the servient tenement, is under a duty so to use his land as not to interfere materially with plaintiff's exercise of the rights which the latter acquired pursuant to its easement grant, including the right of access to its pipeline.

3. Where a continuous interference with property rights is threatened, equity may intervene and exercise its restraining powers.

4. Plaintiff is entitled to relief in the form of a decree permanently enjoining defendant, Charles Kasych, his servants, agents, employes, executors, administrators, heirs and assigns, from increasing the level of the surface of plaintiff's right of way in excess of six inches above the present level of Legislative Route No. 39036.

5. The following is entered as a

*Decree Nisi*

Now, March 5, 1956, it is ordered, adjudged and decreed (1) that defendant, Charles Kasych, his servants, agents, employes, executors, administrators, heirs and assigns, be permanently enjoined from increasing the level of the surface of the ground, including any topping that may be used, over plaintiff's right of way, in excess of six inches above the present level of Legislative Route 39036, and that any excess presently existing over that height shall be removed within 30 days after this decree becomes final, (2) that any topping upon the surface of the ground above plaintiff's right of way shall conform to a formula as to its thickness and its porous quality as may be stipulated by the parties or later prescribed by this court. Record costs to be paid by defendant.

Now, March 5, 1956, the within adjudication is ordered filed and notice thereof given to counsel for both parties and if no exceptions are filed thereto within 20 days after such service, the above decree nisi shall be entered as the final decree in the case.